**STATE of Maine**

v.

**PLEASANT HILL HEALTH FACILITY, INC.**

Supreme Judicial Court of Maine.
Argued April 30, 1985.
Decided July 31, 1985.

James E. Tierney, Atty. Gen., Joseph Wannemacher (orally), Asst. Atty. Gen., Augusta, for the State.

Daviau, Jabar & Batten, Joseph M. Jabar (orally), Waterville, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Pleasant Hill Health Facility, Inc. (Pleasant Hill), the defendant, appeals from its

conviction after jury trial in the Superior Court, Somerset County, on a charge of theft by misapplication of property, a Class C crime in violation of 17–A M.R.S.A. § 358 (1983). We affirm the judgment.[1]

## I.

Pleasant Hill is a corporation operating a nursing home under the same name in Fairfield. During the period of time relevant to this action, about 95% of the patients at Pleasant Hill were receiving state assistance. As Pleasant Hill received monthly social security checks on behalf of these patients, it would deposit them into a transfer account and then into its corporate bank account. Each check included both the amount owed the nursing home for room and board and a sum of about $25 for the patient's personal use. The portion of the social security checks over and above the amount due Pleasant Hill would be transferred from the corporate account to a combined patients' checking account. From that account, patients' funds were transferred to their individual savings accounts.

Pleasant Hill did not always immediately pay into the patients' combined account the amount of money that had been received that month for that fund; there were times the patients' money remained in the corporate account for three to six months before being transferred. Despite these delayed transfers, all patient funds eventually reached the patients' account. Funds from the patients' account were never transferred back to the corporate or transfer accounts, nor were funds from the patients' account used to pay operating expenses.

Pleasant Hill experienced financial difficulties and often had insufficient funds to pay its creditors. Money from patients' personal needs funds was sometimes used to pay corporate expenses before a like amount was transferred to the patients' account from the corporate account. There were times when the patients' account would not have satisfied all the obligations to patients who were entitled to funds from it, and times when the combined amounts in the patients' and the corporate accounts would not have been adequate. At no time, however, was a patient's request for his funds ever denied.

Pleasant Hill was indicted by a Somerset County grand jury for theft by misapplication of the patients' personal needs funds.[2] Upon conviction following a jury trial, Pleasant Hill filed a timely notice of appeal.

## II.

The theft by misapplication of property statute provides in pertinent part:

1. A person is guilty of theft if he obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a 3rd person or to a fund administered by himself, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, if he intentionally or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as his own.

2. Liability under subsection 1 is not affected by the fact that it may be impossible to identify particular property as belonging to the victim at the time of the failure to make the required payment or disposition.

17–A M.R.S.A. § 358.

■ Although its president acknowledged the obligation to pay over the pa-

---

1. The indictment charged the defendant with intentionally or recklessly failing to make payments to a patients' personal needs account and dealing with more than $1,000 of the patients' funds as the corporation's own. 17–A M.R.S.A. § 362(3)(A) (1983) makes theft of property valued between $1,000–$5,000 a Class C crime.

2. John W. Lane, Jr., the president, chief stockholder, and administrator of the corporation was indicted on a similar charge. The Superior Court acquitted Lane after the State rested its case.

tients' funds to the patients' account, Pleasant Hill maintains that its responsibility in handling the social security checks was more in the nature of a debtor-creditor relationship than a trust relationship. On the basis of this proposition, the corporation relies on *State v. Marcotte,* 418 A.2d 1118 (Me.1980). In *Marcotte,* we held that 17–A M.R.S.A. § 358 does not impose criminal liability on debtor-creditor relationships where, unlike situations involving a trust or fiduciary obligation, there exists "no agreement or legal obligation to make payment from the property obtained or its proceeds or from property to be reserved in equivalent amount...." *Id.* at 1121. (emphasis deleted).

We disagree with Pleasant Hill's characterization of its management of patients' personal funds and consequently find the *Marcotte* distinction inapposite. By administering social security checks in their entirety on behalf of its patients, the corporation agreed implicitly to separate the patients' personal needs funds from those allotted to defray the costs of room and board and to hold the patients' money in trust. Pleasant Hill was also, therefore, required to refrain from dealing with the trust funds as the corporation's own. Pleasant Hill's commingling of the patients' personal needs funds with corporate funds and use of the combined funds to pay corporate expenses constituted dealing with the money as its own and a violation of the corporation's trust agreement.

■ Pleasant Hill argues further that because the corporation ultimately made all the required payments from the transfer account to the patients' account, it cannot be guilty under section 358. We acknowledge the statute contains no element of timeliness, but we interpret its absence to indicate that considerations of time are immaterial to the offense. Violation of the statute in this case occurred at the moment Pleasant Hill deposited the patients' personal funds without segregating them from the corporation's own funds.

■ Finally, Pleasant Hill argues that even if it did violate 17–A M.R.S.A. § 358, it was a technical, victimless violation and the Criminal Code's de minimis rule should apply. The statute provides in part:

1. The court may dismiss a prosecution if, upon notice to or motion of the prosecutor and opportunity to be heard, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds the defendant's conduct:

A. Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the crime; or

B. Did not actually cause or threaten the harm sought to be prevented by the law defining the crime or did so only to an extent too trivial to warrant the condemnation of conviction; or

C. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in defining the crime.

17–A M.R.S.A. § 12(1) (1983). On the facts of this case, we find no merit in this contention.

Section 12 gives the court the power to dismiss a *prosecution,* not a *conviction.* There is no evidence in the record to show that any of the patients knew their personal needs funds were not made immediately available to them or acquiesced in the practice of commingling of funds. Furthermore, the amount of money involved in Pleasant Hill's misuse of funds brings its conduct squarely within the proscription of section 358 and obviates any consideration of applying the de minimis rule.

The entry is:

Judgment affirmed.

All concurring.