2002 ME 51

**STATE of Maine**

v.

**Jeffrey SOULE.**

Supreme Judicial Court of Maine.

Argued: Feb. 6, 2002.
Decided: April 2, 2002.

Geoffrey A. Rushlau, District Attorney (orally), Leane M. Zainea, Deputy Dist. Atty., Belfast, for State.

Joseph W. Baiungo, Esq. (orally), Belfast, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Jeffrey Soule appeals from the judgment of conviction of aggravated criminal trespass, 17–A M.R.S.A. § 402–A

1. At the time Soule was indicted with aggravated criminal trespass, the statute, 17–A M.R.S.A § 402–A (Supp.2000), read, in part, as follows:
 1. A person is guilty of aggravated criminal trespass if, knowing that person is not licensed or privileged to do so, that person enters a dwelling place and;
 A. While in the dwelling place violates any provision of chapter 9 or chapter 11.
 *Id.*

2. 17–A M.R.S.A. § 14 (1983) reads as follows:
 A defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses were

(Supp.2000),[1] entered in the Superior Court (Waldo County, *Marsano, J.*), following a jury trial. Soule argues that this conviction violates his statutory and constitutional rights not to be tried again for the same crime, on one element of which he previously had been acquitted. Specifically, Soule argues that his conviction is in violation of 17–A M.R.S.A § 14 (1983)[2] and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[3] U.S. CONST. amend. V. Soule also contends that the court violated his due process rights by not allowing him to review notes taken by a third party observer during his cross-examination testimony. We conclude that Soule effectively waived any claim that his constitutional rights or statutory protections were violated by failing to object and proceeding to trial on the aggravated charge. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] After a series of abusive telephone calls between Soule and his girlfriend and Michael Vogt and his housemate, Meghan Small, Soule went to the Vogt and Small home late at night. Soule testified that when he approached a sliding glass door on the porch he saw Vogt pointing a shot

known to the appropriate prosecuting officer at the time of the commencement of the first trial and were within the jurisdiction of the same court and within the same venue, unless the court, on application of the prosecuting attorney or of the defendant or on its own motion, orders any such charge to be tried separately if it is satisfied that justice so requires.

3. Soule also suggests that his Maine Constitutional rights under Article I, section 8 were violated but neglects to explain how his federal and Maine constitutional rights might differ.

gun at him. At that point Soule said he had no choice but to break through the door and disarm Vogt. Soule and Vogt then fought for the shotgun. Both Soule and Small testified that in the ensuing scuffle, Small climbed on Soule's back and that Soule pulled her off by her hair.[4] Soule testified that Small hit him in the head with a frying pan. Small testified that Soule "grabbed [her] by the hair" and "flung [her] down onto the floor."

[¶ 3] As a result of his first trial, Soule was convicted of aggravated criminal trespass with an underlying assault, and was acquitted of an assault on Michael Vogt. Soule appealed, and we vacated the judgment and remanded on the grounds that Soule was entitled to an instruction on competing harms. *State v. Soule*, 2001 ME 42, ¶ 1, 767 A.2d 316, 317.

[¶ 4] The State then sought to retry Soule on the aggravated criminal trespass charge using the same indictment with an underlying assault on Meghan Small.[5] Soule represented himself at the second trial. Anxious that his trial would be delayed because the court was considering the State's motion to retry him on the aggravated charge, Soule wrote a letter to the court asserting his right to a speedy trial. At a pretrial hearing, Soule agreed to proceed on the aggravated criminal trespass charge based on an assault on Small. On two occasions during the hearing, Soule stated that he understood that the State intended to proceed on the aggravated criminal trespass count and he

had no objection to proceeding with the trial.

[¶ 5] At the second trial, the State presented the same evidence that it presented at the first trial: that Soule not only entered the Vogt and Small home but also assaulted Vogt and Small. The court instructed the jury not to consider testimony about Soule's assault on Vogt. The jury convicted Soule of the aggravated criminal trespass.

## II. DISCUSSION

### A. Double Jeopardy and Section 14 Protections

■ [¶ 6] Soule contends that his constitutional protection against double jeopardy prevents the State from prosecuting him on the aggravated charge using an alternate theory. Soule also argues that section 14 of Title 17–A, the Maine Criminal Code, should prevent the State from retrying Soule on the aggravated criminal trespass charge based on an assault on Meghan Small because the state never charged Soule with that assault when it initially charged Soule with the aggravated criminal trespass and the assault on Vogt.

■ [¶ 7] The question whether a second criminal prosecution violates the Double Jeopardy Clause is a question of law. *State v. Hider*, 1998 ME 203, ¶ 22, 715 A.2d 942, 948. The double jeopardy rights of the United States and Maine Constitutions are co-extensive. *Id.*

---

**4.** At the time of Small's assault on Soule she weighed 288 pounds and stood five feet, four inches tall.

**5.** In the indictment the count for aggravated criminal trespass is indefinite about who Soule assaulted. The count reads as follows:
That on or about the 24th day of October, 1999, in the Town of Liberty, County of

Waldo, State of Maine, Jeffrey Soule, knowing that he was not licensed or privileged to do so, did enter a dwelling, namely the dwelling of Michael Vogt and Meghan Small and while in the dwelling place did violate a provision of Chapter 9 or 11 of 17–A M.R.S.A., namely assault.

■ [¶ 8] At the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for "the same offense." *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Thus "the Double Jeopardy Clause provides three related protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Id.* (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969)). The United States Supreme Court has held that collateral estoppel and the Double Jeopardy Clause bar subsequent relitigation of an issue on which a criminal defendant has been acquitted. *Ashe v. Swenson*, 397 U.S. 436, 444–447, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Court has also held that when a defendant has been convicted of a greater offense he may not be prosecuted for a lesser included offense that is an element of that greater offense. *Harris v. Oklahoma*, 433 U.S. 682, 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Conversely, a defendant ordinarily may not be tried on the greater charge having been convicted or acquitted of a lesser offense where that lesser offense is an element of the greater one. *Brown v. Ohio*, 432 U.S. at 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), *see also Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (Double Jeopardy Clause barred subsequent prosecution for felony in state court after a misdemeanor trial in municipal court). Nonetheless, the Double Jeopardy Clause does not apply to a retrial on a complex statutory crime after a successful appeal from a conviction. *Jeffers v. United States*, 432 U.S. 137, 152, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) ("Thus, for example, in the case of a retrial after a successful appeal from a conviction, the concept of continuing jeopardy on the offense for which the defendant was convicted applies, thereby making retrial on that offense permissible.").

[¶ 9] Section 14 proscribes multiple, serial prosecutions "for multiple offenses based on the same conduct or arising from the same criminal episode." 17–A M.R.S.A § 14 (1983). Section 14 is modeled on Section 1.07(2) of the Model Penal Code; it requires that the State go to trial on a complete indictment for a single criminal episode, thereby imposing compulsory joinder. *See* MODEL PENAL CODE § 1.07 explanatory note to §§ 1.07—1.11 (2001) ("In prohibiting multiple trials in many situations where multiple convictions are permissible, the section thus imposes compulsory joinder.").

[¶ 10] The questions, however, whether the Double Jeopardy Clause and section 14 required joinder of Soule's assault on Small in the indictment and prosecution of that offense at the first trial are compromised by Soule's decision to proceed to trial on the aggravated charge based on the underlying assault on Small. At the pretrial hearing, Soule explicitly stated several times that he understood that he was proceeding to trial on the aggravated criminal trespass charge based on an assault on Meghan Small.[6] Soule did not

---

6. The hearing transcript indicates extensive questioning by the court, and Soule's eagerness to proceed to trial on the aggravated charge:

Soule: But I don't necessarily know that I made my position absolutely clear last week. I am ready to go to trial, whether the aggravated criminal trespass or whether the criminal trespass. As to the aggravated criminal trespass, without trying it here today, it should be very apparent to the prosecution and to the Court, as it is to myself, that the easier part of the aggravated criminal trespass, if you split it into the two

object to proceeding to trial on the aggravated criminal trespass count, notwithstanding his knowledge that section 14 might bar prosecution on the aggravated count. He therefore waived the protections of the Double Jeopardy Clause and section 14.

**B. Soule's Review of Third Party Notes**

■■■ [¶ 11] Soule contends that the trial court denied his due process rights by refusing to allow him to review notes taken by a friend while he was being cross-examined on the witness stand. Consistent with the standard of review for motions, we review a trial court's conduct of trials for an abuse of discretion. *See State v. Pierce*, 2001 ME 14, ¶ 12, 770 A.2d 630, 634. We also review unpreserved issues on appeal for obvious error. *State v. Small*, 2000 ME 182, ¶ 5, 763 A.2d 104, 105.

[¶ 12] We have held that trial courts owe no deference to criminal defendants representing themselves. *State v. Dunn*, 480 A.2d 788, 790 (Me.1984). Although an attorney ordinarily would be permitted to review notes taken by co-counsel, a client, investigator or expert witness, Soule asked that he be allowed to review notes taken by a friend watching the trial. In refusing Soule's request, the court indicated that it believed that this would be disruptive to the proceedings. The court did not exceed the bounds of its discretion by refusing to allow Soule to review his friend's notes. Soule had testified at length, had been cross-examined by the State, and had an opportunity to testify on redirect.

[¶ 13] Soule, moreover, failed to preserve on the record an objection to the court's ruling denying his request to review the notes. Nothing in the record indicates that Soule suffered such "seriously prejudicial error tending to produce manifest injustice," as a result of the court's decision to deny Soule's request. *Small*, ¶ 5, 763 A.2d at 105.

The entry is:

Judgment affirmed.

---

pieces that it is, criminal trespass and assault, the easier part for me to prove is going to be self-defense to an assault. I am not worried about the greater charge.
The Court: By this Meghan Small?
Mr. Soule: Yes. Through statements of myself and Meghan Small. The only corroborating testimony in the previous trial was that Meghan Small initiated contact, and that was my testimony and Meghan Small's, and unless she's going to change her testimony, there's no evidence whatsoever as far as my testimony or Meghan Small's testimony.