MAINE SUPREME JUDICIAL COURT         Reporter of Decisions
Decision:     2015 ME 55
Docket:       Was-14-145
Argued:      February 10, 2015
Decided:      May 7, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, and HJELM, JJ.
Concurrence/
   Dissent:    ALEXANDER and JABAR, JJ.

STATE OF MAINE

v.

RONNIE L. REYNOLDS

SAUFLEY, C.J.

[¶1]  Ronnie L. Reynolds appeals from a judgment of conviction entered by the Superior Court (Washington County, *R. Murray, J.*) after a jury found Reynolds guilty of his second offense of failing to comply with the Sex Offender Registration and Notification Act of 1999 (Class C), 34-A M.R.S. § 11227(2) (2014).  Reynolds is, by law, a lifetime registrant; however, he asserts that he was led to believe that a 2004 amendment to SORNA changed his classification from a lifetime registrant to a ten-year registrant.  He contends that the court erred in excluding relevant evidence of a letter from the Department of Public Safety, State Bureau of Identification that caused him to believe that he was no longer required

to register. *See* 34-A M.R.S. § 11227(6) (2014). We agree that the court erred in excluding the letter. We vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶2] Because multiple changes in Maine's sex offender registration laws affect individual offenders differently depending on the crimes for which they were convicted and the date of sentencing, we briefly review the history as it affects Reynolds. The original Sex Offender Registration Act (SORA) was enacted in 1991 and only applied to persons convicted of gross sexual assault of a victim who was under sixteen years old at the time of the crime. *See* P.L. 1991, ch. 809, § 1 (effective June 30, 1992) (codified at 34-A M.R.S.A. §§ 11001-11004 (Supp. 1992)).

[¶3] On June 28, 1993, approximately one year after SORA first took effect, Reynolds was convicted of three counts of unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C) (Supp. 1992), upon the entry of a nolo contendere plea. He was sentenced to five years' imprisonment, with all but two years suspended, and four years of probation to commence after the unsuspended term of imprisonment. At the time, the crimes for which Reynolds was convicted did not fall within the parameters of SORA, and thus he was not required to register as a sex offender.

[¶4]  In 1995, the Legislature enacted the Sex Offender Registration and Notification Act of 1995 (SORNA of 1995).  *See* P.L. 1995, ch. 680, § 13 (effective July 4, 1996) (codified at 34-A M.R.S.A. §§ 11101-11144 (Supp. 1996)).  SORNA of 1995 slightly broadened the definition of "sex offender," but the new definition still did not include persons convicted of unlawful sexual contact.  *See* 34-A M.R.S.A. § 11103(5) (Supp. 1996).  Moreover, SORNA of 1995 only applied to persons sentenced or placed in institutional confinement on or after September 1, 1996.  *See* 34-A M.R.S.A. § 11102 (Supp. 1996).  Again, Reynolds's conviction did not trigger the registration requirements of SORNA of 1995, and thus he was not yet required to register as a sex offender.

[¶5]  In 1999, the Legislature enacted the Sex Offender Registration and Notification Act of 1999 (SORNA of 1999), which took effect on September 18, 1999.  *See* P.L. 1999, ch. 437, § 2 (effective Sept. 18, 1999) (codified at 34-A M.R.S.A. §§ 11201-11227 (Pamph. 1999)).  SORNA of 1999 required registration by offenders convicted of a much wider variety of offenses, which were then defined as either "sex offenses" or "sexually violent offenses."  *See* 34-A M.R.S.A. § 11203(6), (7) (Pamph. 1999).  A person who committed a "sex offense" was categorized as a "sex offender" and was required to register for ten years.  *See* 34-A M.R.S.A. §§ 11203(5), (6), 11225(1) (Pamph. 1999).  A person who committed a "sexually violent offense" was categorized as a "sexually violent

predator" and was required to register for life. *See* 34-A M.R.S.A. §§ 11203(7), (8), 11225(2) (Pamph. 1999). The crimes for which Reynolds had been convicted in 1993 fell within the definition of "sexually violent offenses." *See* 34-A M.R.S.A. § 11203(7). SORNA of 1999's reach was limited at that time, however, to sex offenders or sexually violent predators sentenced on or after September 18, 1999. *See* 34-A M.R.S.A. § 11202 (Pamph. 1999). Thus, the law still had no effect on Reynolds.

[¶6] It was not until eight years after his conviction that Reynolds became subject to the requirements of SORNA of 1999 as a result of a 2001 legislative amendment that applied the law retroactively to all persons sentenced for sex offenses or sexually violent offenses on or after June 30, 1992, but before September 18, 1999. *See* P.L. 2001, ch. 439, § OOO-11 (effective Sept. 21, 2001) (codified at 34-A M.R.S.A. § 11222(2-A) (Pamph. 2001)). The 2001 amendment required Reynolds to register with the Department of Public Safety, State Bureau of Identification (SBI) as a sexually violent predator by September 1, 2002, unless he was notified sooner of his duty to register by the SBI, the Department of Corrections, or a law enforcement officer, in which case he was required to register within ten days after he was provided notice. *See* 34-A M.R.S.A. § 11222(2-A).

Thus, as a result of the 2001 amendment, Reynolds became statutorily required to register for the rest of his life. *See id.*; 34-A M.R.S. § 11203(7)(A), (8) (2014).[1]

[¶7]  In 2003, the Legislature again amended SORNA of 1999, effective in 2004.  Among other things, it changed the names of the registration categories from "sexually violent predators" and "sex offenders" to "lifetime registrants" and "ten-year registrants."  *See* P.L. 2003, ch. 711, §§ C-12, C-15 (effective July 30, 2004) (codified at 34-A M.R.S.A. § 11203(5), (8) (Pamph. 2004)).  Because Reynolds had been previously classified as a "sexually violent predator," *see* 34-A M.R.S.A. § 11203(7)(A), (8)(A) (Pamph. 2003), the 2004 amendment changed his classification to a "lifetime registrant."  The 2004 amendment affected only the name of Reynolds's classification; the scope of his duty to register—for the rest of his life—remained the same.

[¶8]  In November 2005, Reynolds was charged by criminal complaint with his first offense of failing to comply with SORNA of 1999 (Class D), 34-A M.R.S. § 11227(1) (2014).  The complaint did not refer to Reynolds as a lifetime registrant or a ten-year registrant—it simply referred to him as "a registrant."  In January 2006, Reynolds pleaded guilty to the charge and was sentenced to ten days in the Washington County Jail.

---

[1]  In 2001, the Legislature repealed SORA and SORNA of 1995 in their entirety.  *See* P.L. 2001, ch. 439, § OOO-5 (effective Sept. 21, 2001).

[¶9] Over seven and a half years later, and more than ten years after SORNA of 1999's amendment in 2001 had triggered Reynolds's duty to register, in September 2013, Reynolds was charged by criminal complaint with his second offense of failing to comply with SORNA of 1999 (Class C), 34-A M.R.S. § 11227(2). After a grand jury issued an indictment, Reynolds entered a not guilty plea and proceeded to trial.

[¶10] Before the trial began, Reynolds proffered for admission a letter that he had received from the SBI in support of his affirmative defense of "just cause" for failing to comply with his duty to register. *See* 34-A M.R.S. § 11227(6). For purposes of the court's preliminary evidentiary ruling, the parties stipulated that Reynolds received the letter on or before July 30, 2004, the date when SORNA of 1999's 2004 amendments took effect. *See* P.L. 2003, ch. 711, §§ C-13, C-14 (effective July 30, 2004) (codified at 34-A M.R.S.A. § 11203(6)(B), (7)(A) (Pamph. 2004)). The letter explained the general reclassification of two types of unlawful sexual contact provisions from offenses requiring lifetime registration to offenses classified under the ten-year registration category.[2] Although the letter

---

[2] The content of the proffered letter was as follows:

Dear Registrant:

This letter is to inform you of the new law changes that will be taking effect as of July 30, 2004 in regards to the Sex Offender Registry and Notification Act 1999 as amended.

indicates that the affected crimes were unlawful sexual contact, Class D, rather than unlawful sexual contact, Class C—the crime for which Reynolds was convicted in 1993—Reynolds argued that, given the confusing nature of the letter, he believed that he had been reclassified as a ten-year registrant, and therefore he thought that his obligation to register had ended before 2013. He argued that he should be allowed to present the letter to the jury in support of his affirmative defense of just cause. The court disagreed and determined that the letter was not relevant.

[¶11] Reynolds stipulated to his 2006 conviction for failing to register pursuant to SORNA of 1999 and a very brief trial was held. Reynolds testified at trial that he failed to register in September 2013. No other evidence was presented at trial as to whether Reynolds may have had just cause for failing to register, and the jury was not instructed on the just cause affirmative defense. After a jury

---

1. It changed the names of registration categories from "sexually violent predators" and "sex offenders" to "lifetime registrants" and "10-year registrants".

2. It moves the 2 **Class D** unlawful sexual contact 17-A MRSA sec. 255.1.B., 17-A MRSA sec. 255.1.D., 17-A MRSA sec. 255-A.1.C. and 17-A MRSA sec. 255-A.1.G. offenses that currently require lifetime registration to the 10-year registration category.

   Note: If you have been convicted of two different sex offenses that require 10 year registration, but each conviction has a different date of sentence, due to the multiple offenses you will still be required to register as a lifetime registrant.
   **(This is not a change in the law).

(Emphasis in original.)

found Reynolds guilty, the court sentenced him to two years of incarceration, all but sixty days suspended, and two years of probation. Reynolds timely appealed pursuant to 15 M.R.S. § 2115 (2014) and M.R. App. P. 2(b)(2)(A).

## II. DISCUSSION

[¶12] SORNA of 1999 requires that any person convicted of a sexually violent offense register with the SBI as a lifetime registrant. 34-A M.R.S. §§ 11203(7)(A), (8)(A), 11222(2-A) (2014). Included in the definition of "sexually violent offense" is the offense for which Reynolds was originally convicted—unlawful sexual contact (Class C). *See* 34-A M.R.S. § 11203(7)(A) (defining "sexually violent offense" to include a conviction under former 17-A M.R.S.A. § 255(1)(C)). Because Reynolds was sentenced for unlawful sexual contact after June 30, 1992, but before September 18, 1999, he was statutorily obligated to register with the SBI by September 1, 2002, unless he was notified sooner of his duty to register by the SBI, the Department of Corrections, or a law enforcement officer. *See* 34-A M.R.S.A. § 11222(2-A) (Pamph. 2001). Every ninety days from his initial registration date, Reynolds is obligated to mail a completed written verification form and a current photograph to the SBI; once

every five years he must verify his registration information in person. *See* 34-A M.R.S. § 11222(4-B) (2014).[3]

[¶13] Failure to comply with SORNA of 1999 is a strict liability crime, *see* 34-A M.R.S. § 11227(4) (2014), meaning that the State is not required to prove a culpable state of mind, *see* 17-A M.R.S. § 34(4-A) (2014). However, the Legislature has provided that "just cause" is an affirmative defense to a failure to comply with one's registration duties pursuant to SORNA of 1999. *See* 34-A M.R.S. § 11227(6).

[¶14] Reynolds does not dispute that he did not register in September 2013. He argues, however, that by 2013, he had just cause for failing to register based on his interpretation of the letter from the SBI. Because the letter is relevant to support his just cause affirmative defense, he argues, the court erred in excluding the letter.

[¶15] "Just cause" for failing to register pursuant to 34-A M.R.S. § 11227(6) is not defined in the criminal code. Rather, "[w]hat constitutes just cause in any given case is a matter that is left to the sound judgment of the jury." *Cf. State v. Small*, 2000 ME 182, ¶ 3, 763 A.2d 104. Important to our consideration here, just cause "includes a requirement of reasonable belief similar

---

[3] The first time a registrant fails to comply with SORNA of 1999's requirements he or she commits a Class D crime. *See* 34-A M.R.S. § 11227(1) (2014). A second offense results in a Class C crime. *See id.* § 11227(2).

to other justification defenses." *Id.* ¶ 4. Thus, a defendant raising just cause as an affirmative defense pursuant to 34-A M.R.S. § 11227(6) must prove, by a preponderance of the evidence, that it was reasonable for him to believe that he had a justifiable reason for failing to register. *Cf. Small*, 2000 ME 182, ¶ 4, 763 A.2d 104; *see also* 17-A M.R.S. § 101(2) (2014). Therefore, although the State is not required to prove a culpable state of mind as an element of the crime, a defendant charged with this offense is nonetheless entitled by statute to present a defense that he reasonably believed that he was not required to comply with the registration duties. To carry his burden, a defendant must be "accorded wide latitude to present all evidence relevant to his defense." *State v. Garrett*, 1998 ME 7, ¶ 5, 704 A.2d 393 (quotation marks omitted); *see State v. Buchanan*, 2007 ME 58, ¶ 8, 921 A.2d 159 ("A criminal defendant is entitled to admission of relevant evidence, and the court's choice to exclude relevant evidence is significantly limited." (quotation marks omitted)).

[¶16] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. "We review a trial court's determination regarding the relevancy of evidence for clear error." *Buchanan*, 2007 ME 58, ¶ 8, 921 A.2d 159.

[¶17]   Reynolds's receipt of the 2004 letter was evidence that, if the jury believed Reynolds, tended to make it more probable that he reasonably believed he had become a ten-year registrant and thus had a justifiable reason for not registering in 2013—a fact that is of consequence to raising a just cause affirmative defense.  *See Small*, 2000 ME 182, ¶¶ 3-4, 763 A.2d 104.  The letter, which may have been difficult for someone without a legal background to fully understand, explained that certain types of unlawful sexual contact crimes had been moved from the lifetime registration category to the ten-year registration category.  The letter then listed four statutory provisions, all involving section 255, which is the same section that Reynolds was convicted of violating in 1993.  It is possible that a fact-finder could find credible Reynolds's assertion that he believed, reasonably, that his classification had been changed.  Thus, the letter was relevant to Reynolds's affirmative defense and should have been admitted unless excluded on some other ground.

[¶18]   In excluding the letter, the court noted that the letter expressly referred to changes in the law with respect to Class D unlawful sexual contact provisions, whereas Reynolds was undisputedly convicted of Class C offenses in 1993.  Further, the court noted that after Reynolds's initial conviction, his receipt of the letter, and his 2006 conviction, Reynolds fulfilled his registration requirements through at least 2010.  The court stated,

12

[a]ll of [this] leads this [c]ourt to conclude that, as a matter of law, this evidence would not be a demonstration of just cause under the affirmative defense provisions of subsection 6; and as such, this particular exhibit . . . would have no other relevance and would not be admissible in the context of this trial.

[¶19] The court's reference to Reynolds's continued registration through 2010 appears to support, rather than diminish, Reynolds's just cause argument. His obligation to register began, at the earliest, in late 2001, and, at the latest, on September 1, 2002. Had the 2004 amendment actually changed Reynolds's classification to a ten-year registrant, his obligation to register, by his count,[4] would have continued after his conviction in 2006 and ended sometime in 2011 or 2012.

[¶20] Thus, it appears that the court excluded the letter based on its own credibility determination. It determined that Reynolds's belief that the letter had reclassified him as a ten-year registrant was not reasonable after considering the contents of the letter and Reynolds's subsequent actions. In so doing, the court mistakenly acted as a fact-finder. *See State v. Allen*, 2006 ME 20, ¶ 26, 892 A.2d

---

[4] Pursuant to SORNA of 1999, even if Reynolds had been reclassified as a ten-year registrant in 2004, his obligation to register would have ended years before his second offense of failing to register in 2013. Because Reynolds was sentenced for the initial conviction of unlawful sexual contact between June 30, 1992, and September 17, 1999, determining the date from which the ten-year period would have run—whether it was from conviction, sentence, release, or some other event—would have been governed by 34-A M.R.S.A. § 11225(1)(B) (Pamph. 2004). Pursuant to section 11225(1)(B), the ten-year period for Reynolds's registration obligation would have been triggered when he was conditionally released from incarceration—roughly, the summer of 1995. *See id.* Thus, had Reynolds been reclassified as a ten-year registrant, his duty to register would actually have ended in the summer of 2005.

447 ("The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." (quotation marks omitted)); *see also Chenell v. Westbrook College*, 324 A.2d 735, 737 (Me. 1974) ("The trial [c]ourt may not substitute [its] judgment as to the credibility of witnesses for the judgment of the jury.").

[¶21]  The letter, viewed in the light most favorable to Reynolds, is sufficient for a jury to entertain a "reasonable hypothesis" that Reynolds had just cause for failing to register pursuant to SORNA of 1999.  *See State v. Dyer*, 2001 ME 62, ¶ 4, 769 A.2d 873 (providing that "a defense is in issue," so as to warrant a jury instruction on the defense, "if the evidence is sufficient to make the existence of all facts constituting the defense a reasonable hypothesis for the fact finder to entertain" (quotation marks omitted)).  Thus, had the letter been admitted, the court would have been called upon to instruct the jury on the affirmative defense of just cause.

[¶22]  In short, had the letter been admitted in evidence and had Reynolds offered testimony about the letter, it would have been for a jury to determine the reasonableness of (1) Reynolds's belief that the letter reclassified him as a ten-year registrant and (2) his belief that the ten-year registration period had expired, thus amounting to just cause for failing to register.  To the extent that the court determined that Reynolds's purported reliance on the letter was not believable, the

court made a credibility determination that should have been made by the jury. *See Allen*, 2006 ME 20, ¶ 26, 892 A.2d 447. The court's exclusion of the letter as irrelevant was clearly erroneous.

The entry is:

> Judgment vacated. Remanded for further proceedings.

---

ALEXANDER, J. and JABAR, J., concurring in part and dissenting in part.

[¶23] We concur that we must vacate the judgment of conviction in this appeal. However, on remand we would order entry of judgment for Reynolds.

[¶24] The Court's opinion accurately demonstrates that Ronnie Reynolds's offenses were committed and he was convicted and sentenced for those offenses at a time before the sanctions and costs imposed by the Sex Offender Registration and Notification Act (SORNA), 34-A M.R.S. §§ 11203, 11222 (2014), and its prior versions were part of criminal sentencing or were later amended to become "civil" sanctions applied to his offenses.

[¶25] However, as we wrote in *Doe I v. Williams*, 2013 ME 24, ¶¶ 85-103, 61 A.3d 718 (Silver, J., dissenting), application of the SORNA requirements is a punitive sanction that constitutes punishment for violation of laws. As such, after-the-fact application of the SORNA sanctions and costs to enhance the

penalties originally available for Reynolds's offenses is violative of the prohibitions on ex post facto application of penalty enhancements contained in article I, section 11 of our Maine Constitution and article I, section 9 of the U.S. Constitution. *See Doe I*, ¶¶ 87-103. Rather than repeat that analysis here, we incorporate those paragraphs of *Doe I* by reference into this opinion.

[¶26] Because application of SORNA to enhance the penalties originally imposed on Reynolds is violative of the prohibitions on ex post facto laws in our state and federal constitutions, we would vacate the conviction and remand for entry of judgment for the defendant.

—————————————

**On the briefs:**

> James T. Lawley, Esq., Lipman & Katz, P.A., Augusta, for appellant Ronnie L. Reynolds
>
> Carletta Bassano, District Attorney, and Paul Cavanaugh II, First Asst. Dist. Atty., Prosecutorial District VII, Ellsworth, for appellee State of Maine

**At oral argument:**

> James T. Lawley, Esq., for appellant Ronnie L. Reynolds
>
> Paul Cavanaugh II, First Asst. Dist. Atty., for appellee State of Maine

Washington County Superior Court docket number CR-2013-161
FOR CLERK REFERENCE ONLY